Filed 9/16/22  In re H.R. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re H.R., a Person Coming Under the Juvenile Court Law. | |
| | D080481 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J520473) |
| v. | |
| N.J., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Marissa A. Bejarano, Judge.  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia Silva, Acting County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Dana Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

# I.

## INTRODUCTION

N.J. (Mother) appeals from a Welfare and Institutions Code[1] section 366.26 order terminating her parental rights over her now two-year-old daughter, H.R. Mother's sole complaint on appeal is that the San Diego County Health and Human Services Agency (the Agency) failed to satisfy its initial inquiry duties under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and Welfare and Institutions Code section 224.2 because it did not interview maternal grandmother about H.R.'s possible Native American ancestry.

The Agency contends its initial inquiry was sufficient and that, regardless, any error was harmless. We agree in part. We conclude that the Agency's failure to conduct an ICWA inquiry with maternal grandmother violated section 224.2, subdivision (b), but that, applying the prejudicial error standard adopted in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*), the error was harmless. Therefore, we affirm the order.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In July 2020, the Agency petitioned the juvenile court under section 300, subdivision (b)(1) on behalf of newborn H.R. Among the Agency's allegations was that during Mother's pregnancy with H.R., Mother abused

---

[1]   All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]   Because Mother's only contention on appeal concerns ICWA, we limit our factual background accordingly.

alcohol and/or controlled substances, including amphetamine and methamphetamine, making her unable to provide regular care for H.R.

The Agency reported in its detention report that, at a meeting between the Agency and Mother in late July 2020, Mother denied having any Native American ancestry.

At the August 2020 detention hearing, the juvenile court asked Mother directly if she had any Native American ancestry in her family and if she had any reason to believe that the alleged father, L.R. (Father), had any Native American ancestry in his family.[3] Mother responded "no" to both questions. The court ordered Mother to complete the "Parental Notification of Indian Status" form and submit it to the Agency. The record does not reflect that any such form was completed. The court also ordered Mother to disclose to the Agency the names, residences, and any known identifying information of H.R.'s maternal and paternal relatives. The court deferred ruling on whether ICWA applied.

In the Agency's jurisdiction/disposition report, the social worker noted that at two August 2020 meetings between Mother and the Agency, Mother again denied having any Native American ancestry in her family. The social worker also noted that, in July 2020, she called and left voice messages for maternal grandmother twice and visited maternal grandmother's last known address, but was unable to reach her. The report stated that the Agency had not been able to reach Father to conduct an ICWA inquiry with him.

---

[3]     Although Father is only the alleged father of H.R. because he declined to take a paternity test, we refer to him as Father for readability. Father is not a party to this appeal, and we discuss him as needed.

In the Agency's subsequent addendum report, the social worker noted that Mother did not identify any relatives or extended family members who could care for H.R.

In the Agency's September 2020 declaration of due diligence, the Agency stated that, as of September 2020, Father still could not be located, and that Mother said Father did not wish to speak with the Agency or attend court.

Mother did not attend the October 27, 2020 contested jurisdiction/disposition hearing. There, the juvenile court found without prejudice that there was no reason to believe H.R. was an Indian child and that ICWA did not apply. In addition, the court again ordered Mother to disclose to the Agency the names, residences, and any known identifying information of all maternal and paternal relatives of H.R.

In the Agency's June 2021 addendum report, the social worker noted that the Agency was still unable to reach Father. At the related contested hearing, the juvenile court reiterated its finding without prejudice that ICWA did not apply.

In the Agency's October 2021 WIC report, the Agency reported that in August and September 2021, it had been in contact with maternal grandmother about H.R.'s placement. In September 2021, maternal grandmother notified the Agency that she was feeling "pressure" because Mother said she wanted H.R. to be placed with family. Maternal grandmother stated that she did not want to be considered for H.R.'s placement but wished to have a relationship with H.R. There is no indication in the record that the Agency ever asked maternal grandmother about H.R.'s potential Native American ancestry.

In the Agency's subsequent addendum report, the social worker noted that when she called maternal grandmother in September 2021, maternal grandmother stated that she was no longer in contact with Mother because Mother was upset that maternal grandmother was not being assessed for H.R.'s placement. Maternal grandmother also disclosed that Mother would be giving birth soon.

In the Agency's January 2022 addendum report, the social worker noted that, in October 2021, Mother had informed the Agency that she was staying with maternal grandmother. Maternal grandmother confirmed to the Agency that Mother was staying with her.

On April 6, 2022, the juvenile court terminated Mother's parental rights, selected adoption as H.R.'s permanent plan, and designated H.R.'s caregivers as her prospective adoptive parents. The court again found without prejudice that ICWA did not apply. Mother timely appealed from that order.

## III.

## DISCUSSION

Mother contends that the juvenile court erred by finding ICWA inapplicable before the Agency asked maternal grandmother about H.R.'s possible Native American ancestry. Mother raises no other appellate issue concerning the section 366.26 order that she is appealing. The Agency concedes that it never conducted an ICWA inquiry with maternal grandmother but contends that this was not error and, regardless, the error was harmless. We agree in part. Although we conclude that the Agency's initial inquiry under ICWA was deficient, we conclude the error was harmless and affirm.

5

A.    *ICWA Inquiry Duties*

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.)  Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child."  (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings.  First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  (*Id.*, subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)

A juvenile court finding that ICWA is inapplicable generally implies that the Agency has fulfilled its inquiry duty.  (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 (*Austin J.*) [a finding that "ICWA does not apply" implies social workers and court "did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry"].)  (*Id.* at p. 885)  We review ICWA findings for substantial evidence, but "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied."  (*D.S.*, *supra,* 46 Cal.App.5th at p. 1051.)

B.     *Initial Inquiry*

The first stage of initial inquiry " 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S.*, *supra*, 46 Cal.App.5th at p. 1049.)  ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c) [extended family member "defined as provided in [§] 1903" of ICWA].)

Mother asserts that the Agency's initial inquiry violated section 224.2, subdivision (b) because the Agency failed to ask maternal grandmother about H.R.'s potential Native American ancestry, despite the Agency having spoken with maternal grandmother on multiple occasions.  The Agency, however, contends that its initial inquiry was sufficient because in July 2020, it called maternal grandmother several times and visited her last known address but could not locate her.

We agree with Mother that the Agency's initial inquiry efforts fell short.  Grandparents are "extended family members" for ICWA purposes. (See 25 U.S.C. § 1903(2).)  It is true that the Agency tried to contact maternal grandmother early in its investigation, but those efforts did not extinguish the Agency's inquiry obligations under ICWA.  Rather, the Agency's duty of inquiry is a continuing and affirmative one.  (*Isaiah W.*, *supra*, 1 Cal.5th at p. 9; § 224.2, subd. (a).)  Thus, when the Agency finally reached maternal grandmother in August, September, and October 2021, it could have—and

7

should have—asked her about H.R.'s potential Native American ancestry. (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c); *D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1049; see *In re J.C.* (2022) 77 Cal.App.5th 70, 78–79 [error in finding ICWA did not apply where agency had regular contact with paternal grandmother and maternal grandmother was readily accessible, but it did not ask them about possible Native American ancestry]; *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 (*Darian R.*) [error in finding ICWA did not apply where agency had contact with maternal aunt and maternal grandfather but did not ask them about possible Native American ancestry]; *Y.W.*, *supra*, 70 Cal.App.5th at p. 556 ["[T]he point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child [is] to obtain information the parent may not have."].)

Because substantial evidence does not support the juvenile court's implicit finding that the Agency complied with its duty of initial inquiry under section 224.2, subdivision (b), we conclude the court erred by finding that ICWA did not apply to H.R.'s case.

C.    *Harmless Error*

Next, we consider the appropriate remedy. Mother contends that the initial inquiry error was prejudicial and requires reversal. The Agency, on the other hand, contends the error was harmless. We agree with the Agency and therefore affirm.

There is a split of authority in the California courts of appeal as to the proper standard for prejudicial error under ICWA. (See *Dezi C.*, *supra*, 79 Cal.App.5th at pp. 777–782 [discussing the "continuum" of three rules for "assessing whether a defective initial inquiry is harmless" (" 'automatic reversal,' " " 'readily obtainable information,' " and " 'presumptive

affirmance' ") and proposing a fourth (" 'reason to believe' ")].)  Because the California Supreme Court has yet to resolve this split, we recently evaluated each of these approaches in *In re Y.M.* (Sept. 2, 2022, D080349) __ Cal.App.5th __ [2022 WL 4007600] (*Y.M.*)).  For the same reasons discussed in *Y.M.*, we again decline to apply the presumptive affirmance approach (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430–1431), the automatic reversal approach (*Y.W.*, *supra*, 70 Cal.App.5th at p. 556 and *In re Antonio R.* (2022) 76 Cal.App.5th 421, 432–437), or the reason to believe approach (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779), and instead, apply the readily obtainable information approach employed in *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.  (See *ibid.*)

In *Benjamin M.*, the agency could not locate the minor's father and did not obtain any information about Native American ancestry from the minor's paternal side.  Although the agency had access to the father's brother and sister-in-law, it failed to ask them about potential Native American ancestry. In concluding that this error was prejudicial, the appellate court reasoned that the missing information was "readily obtainable" and "likely to bear meaningfully upon whether the child is an Indian child."  (*Id.* at p. 744.)

Here, because the record indicates that the Agency had multiple contacts with maternal grandmother, we conclude that any information maternal grandmother could have provided was "readily obtainable" under *Benjamin M.* (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)  The record does not show, however, that information from maternal grandmother was likely to "bear meaningfully" on whether H.R. is an Indian child under ICWA. (*Ibid.*)  Mother's conclusory assertion to the contrary—that simply because ICWA information "could easily be obtained from [maternal] grandmother,"

9

there was a reasonable probability of obtaining meaningful information—is not persuasive.

First, there is not even a suggestion in the record that H.R. might have potential Native American ancestry, and Mother has consistently and repeatedly denied—both to the Agency and to the court—any knowledge of possible Native American ancestry. Further, the record indicates that Mother was in touch with maternal grandmother at various points during the dependency proceeding, and even lived with maternal grandmother at least in September and October 2021, prior to and after giving birth to H.R.'s younger sibling. The record also indicates that Mother wanted maternal grandmother to adopt H.R. Therefore, presumably, Mother had a motive to ask, and easily could have asked, maternal grandmother about any possible Native American ancestry that may have provided her with additional rights or protection under ICWA. (See *Darian R.*, *supra*, 75 Cal.App.5th at p. 510 [because mother lived with maternal grandfather and maternal aunt, mother did not meet her burden on appeal to show that agency's inquiry of those extended family members "would have meaningfully elucidated the children's Indian ancestry"]; *Y.M.*, *supra*, __ Cal.App.5th __ [2022 WL 4007600] [agency's failure to conduct ICWA inquiry with paternal grandmother and uncle was harmless error under *Benjamin M.*, where mother and father denied Native American ancestry, father lived with paternal grandmother and uncle, and father had close and regular proximity to paternal grandmother and could have asked her about Native American ancestry].) Thus, we cannot say that inquiring of maternal grandmother is likely to shed meaningful light on whether H.R. is or may be an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

Accordingly, considering Mother's consistent denials of any Native American ancestry, the utter lack of any suggestion in the record that H.R. might have Native American ancestry, and our conclusion that an inquiry of maternal grandmother is not likely to bear meaningfully on whether H.R. is an Indian child, we conclude that the Agency's inquiry error was harmless and affirm. (*Benjamin M., supra*, 70 Cal.App.5th at p. 744.)

DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


HALLER, J.